# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Location of the cellular telephone assigned call Number 414.231.0744, described more fully in Attachment A.

)
)
)
)
)
)

Case No. __20-913M(NJ)_____

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 21 U.S.C. § 841

The application is based on these facts: See attached affidavit.

☒ Delayed notice of __30__ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*SA Scott Marlow*
*Applicant's signature*

DEA Special Agent Scott Marlow,
*Printed Name and Title*

Sworn to before me and signed in my presence: Date: 3/19/20

*Judge's signature*

City and State: Milwaukee, Wisconsin          Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Scott Marlow, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number 414.231.0744 (**Target Cell Phone #1**), whose service provider is T-Mobile, a wireless telephone service provider headquartered in Parsippany, New Jersey. **Target Cell Phone #1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  I have worked full-time as a law enforcement officer for the past twenty-one (21) years. I am a Special Agent for the Drug Enforcement Administration assigned to the Milwaukee District Office. I have been so employed for the past 12 years. Prior to my current employment, I was a police officer for the City of West Allis for approximately 9 years. During my duration as a law enforcement officer, I have received specialized training in identifying and investigating narcotic distribution enterprises and their related criminal activities. I have personally been involved in a number of such investigations. During my tenure with DEA, my primary investigative specialization has been in the area of urban heroin, cocaine and/or poly drug conspiracies. Presently, I am part of a team of experienced narcotics law enforcement investigators/officers, including

Special Investigators and Task Force Officers of the DEA, with experience in investigations concerning controlled substance law enforcement.

3. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

- a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

- b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

- c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

- d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of, and to make arrests for, federal felony offenses.

3

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with the intent to distribute controlled substances) have been committed, are being committed, and will be committed by Denzil CROSBY. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal offenses.

## PROBABLE CAUSE

7. In February of 2019, case agents working at HIDTA received information from a source of information (SOI) regarding a heroin and cocaine dealer known as "True," and subsequently positivitely identified by the SOI as Denzil CROSBY (dob: 03/07/1995) On February 2, 2019, CROSBY provided the SOI with less than one gram of suspected heroin, which was payment for renting a vehicle for CROSBY, and the SOI turned that suspected heroin over to case agents. The suspected heroin tested positive for the presence of opiated.

8. On March 4, 2019, case agents conducted surveillance of CROSBY and Milwaukee Police Department officers attempted to conduct a traffic stop of the vehicle in which CROSBY was a passenger. The driver of the vehicle pulled over and according to the driver, CROSBY then began to panic, attempted to manipulate the gear shift, and attempted to have the driver flee the traffic stop. CROSBY was detained by the MPD officers and provided a false name to the officers. CROSBY later admitted to having

4

heroin and cocaine on his person, and he turned over a plastic bag which contained 1.9 grams of heroin and 1.1 grams of cocaine.

9. On March 16, 2020, Milwaukee Police Department officers attempted a traffic stop of a reckless vehicle. The vehicle fled police and crashed into another occupied vehicle killing one of the occupants. The fleeing/ striking vehicle is a 2016 Chevy Impala, VIN (1G1105SA0GU164027). Inside the Impala in plain view was a pistol and narcotics. The pistol recovered from the vehicle was a Glock Model 30, .45cal semiautomatic pistol. Serial # EHP926US. The suspected cocaine was broken down into 4 smaller bags. The first bag had 13 individually wrapped bags with a total weight of 17.47 grams; the second bag had 8 individually wrapped bags with a total weight of 4.29 grams; the third bag had 6 individually wrapped bags with a total weight of 1.42grams; and, the fourth bag had a total weight of 2.01 grams. Officers also recovered marijuana from the vehicle. Multiple witnesses identified CROSBY as being the driver of the vehicle.

10. On March 19, 2020, case agents received information from a confidential source (CS #1) regarding CROSBY's heroin trafficking activities and his current location near the Illinois boarder. CS #1 stated that within the past two weeks s/he has observed CROSBY in possession of distribution amounts of heroin in Milwaukee and observed CROSBY with large amounts of U.S. currency, which CS #1 believed to be proceeds from heroin trafficking. CS #1 stated that CROSBY is currently evading law enforcement in an unknown location in either Wisconsin or Illinois. CS #1 stated that CROSBY admitted to being involved in the crash on March 16, 2020 and stated that he fled because of the drugs

in the vehicle. CS #1 stated that on March 19, 2020, CROSBY called CS #1 from a blocked number and told CS #1 to meet with CROSBY this evening, March 19, 2020 near the Illinois border to bring him a cellular telephone in CS #1's name. **Target Cell Phone #1** is currently in the possession of case agents and CS #1 has agreed to take possession of **Target Cell Phone #1** this evening and will provide **Target Cell Phone #1** to CROSBY at their meeting, which is currently scheduled to occur on March 19, 2020.

11. For several reasons, case agents believe that CS #1 is reliable and credible. First, CS #1 has been providing information since 2018 and the information provided in the past has led to multiple arrests and several search warrants. Second, the information provided by CS #1 in this investigation is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information has been corroborated through independent investigation, including other law enforcement reports and sources of information. CS #1 has no prior felony convictions and is cooperating for monetary consideration. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein. For these reasons, case agents believe CS #1 to be reliable.

12. Case agents searched law enforcement databases to confirm that **Target Cell Phone #1** is currently being serviced by T-Mobile.

13. Case agents are requesting this warrant authorizing the disclosure of data related to **Target Cell Phone #1** for 45 days to further investigate CROSBY's activities,

and to identify locations to which CROSBY is traveling in order to further his drug distribution network.

14. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that CROSBY is engaged in the trafficking and distribution of heroin and is likely to use **Target Cell Phone #1** while engaged in these crimes. I further submit that probable cause exists to believe that obtaining the location information of **Target Cell Phone #1** will assist case agents in determining CROSBY's customers, co-conspirators, sources of supply, and help to identify stash houses.

15. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell

7

towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Cell Phone #1**, including by initiating a signal to determine the location of the **Target Cell Phone #1** on T-Mobile network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I further know that T-Mobile can collect what are known as RTT records, PCMD records, NELOS records, Timing Advance ("TrueCall") records, and other records containing timing advance measurements and distance-to-tower measurements for various technologies (including CDMA, GSM, UMTS, LTE, etc.).

18. Based on my training and experience, I know that T-Mobile can collect cell-site data about **Target Cell Phone #1**.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **Target Cell Phone #1** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile for a time period of 45 days from the date the warrant is signed. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of

interference with T-Mobile services, including by initiating a signal to determine the location of **Target Cell Phone #1** on T-Mobile network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **Target Cell Phone #1** outside of daytime hours.

# ATTACHMENT A
## Property to Be Searched

1. The cellular telephone assigned call number 414.231.0744 (**Target Cell Phone #1**), whose wireless service provider is T-Mobile, a company headquartered at 4 Sylvan , Parsippany, New Jersey.

2. Information about the location of **Target Cell Phone #1** that is within the possession, custody, or control of T-Mobile.

# ATTACHMENT B
## Particular Things to be Seized

All information about the location of **Target Cell Phone #1** described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of **Target Cell Phone #1**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including RTT records, PCMD records, NELOS records, Timing Advance ("TrueCall") records, and all other records containing timing advance measurements and distance-to-tower measurements for various technologies (including CDMA, GSM, UMTS, LTE, etc.), as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **Target Cell Phone #1** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).